## HENRY DeBARROS *v.* A. L. SINGLETON ET AL.
(7456)

BORDEN, DALY and NORCOTT, Js.

Argued November 8, 1989—decision released March 27, 1990

*Bruce L. Levin,* with whom, on the brief, was *Serge G. Mihaly,* for the appellant (plaintiff).

*Michael J. Belzer,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Charles Overend,* assistant attorney general, for the appellee (defendant Second Injury and Compensation Assurance Fund).

DALY, J. The plaintiff appeals from the decision of the compensation review division affirming the workers' compensation commissioner's (commissioner) dismissal of the plaintiff's request for permanent partial disability benefits. The plaintiff claims that the review division erred in refusing to disturb the commissioner's conclusions. We disagree.

The issue before the commissioner was whether the plaintiff had suffered permanent partial disability of the brain as the result of an accident that occurred on July 21, 1981, in which a fellow worker plummeted nine stories to his death, striking the plaintiff.[1] The medical reports of L. M. Davey, a neurosurgeon, constituted the only medical evidence in the case.

In the first of two reports, Davey stated that the plaintiff continued to complain of various symptoms as a result of the accident, including severe headaches and a fear of heights.[2] He stated that it would be difficult

[1] The plaintiff had already been awarded all the benefits due under the provisions of chapter 568 of the General Statutes based on the commissioner's finding that the plaintiff's injuries arose out of and in the course of his employment.

[2] The doctor submitted the following report:

"Mr. DeBarros was seen at the office on March 17, 1983 for evaluation of his complaints of headaches and numbness of the right side of the face and stiffness of the neck.

"This forty-one year old painting contractor stated that on July 21, 1981 a worker fell from nine stories high and the patient was struck by this falling worker. He was knocked to the ground and when he came to he was bleeding from the head and his fellow worker was lying dead next to him, judging from the conversation that he overheard among the police at the scene. Within two to five days he had developed stiffness of his neck and was out of work for four months. He then worked for three months, but continued to have headaches and strange feelings as if he were going through a concrete floor.

"The patient stated that as a result of that, he has been out of work for the past year, has gained twenty-five pounds and has a fear of heights.

"His present complaints also include numbness of the right temporal area, intermittent stiffness of his neck and headaches starting in the back of the head radiating to the right temple and right frontal area. These headaches are described as being constant and throbbing. Occasionally, he has a rippling feeling at the top of his head with a sharp pain, but these last only for seconds.

"There is nothing in the past history, family history or review of systems of a contributory nature.

"On examination the patient was a well developed, colored, male who was sixty-eight inches tall and weighed 206 pounds. The patient stated that he was left handed. Examination of the head revealed a 2.5 cm. thick scar

to estimate permanent partial disability, but that "considering the psychological problems" of the plaintiff, he offered an estimate of a 5 to 10 percent permanent partial disability of "the whole person." The plaintiff's attorney informed Davey that the Workers' Compensation Act requires that any disability be expressed in terms of a particular organ, and cannot be ascribed simply to the whole person. The doctor responded in his second report that, "since the [plaintiff's] main residual disability is on a psychological basis, it might be fair to apply the five to ten percent rating to the brain."

The commissioner found that the plaintiff suffered posttraumatic headaches, but concluded in a separate finding that there was "no evidence presented that proves within the parameters of reasonable medical probability that the claimant suffered permanent partial disability to his brain as a result of the accident of [July 21, 1981]." The compensation review division

on the right anterior temporal area. There was diminished sensation to pin prick from the edge of this scar to the ear and also of the area of the neck just behind the right jaw.

"Neurological examination showed a fully oriented mentally alert, person who showed no difficulty with memory, but seemingly still affected by the emotional impact of his fellow worker's death. Cranial nerves were intact. He showed no motor, sensory or reflex deficits. There were no pathological reflexes.

"Examination of the neck and upper extremities showed a normal range of motions with no elicitation of pain at the extremes of motion. There were no motor, sensory or reflex deficits in either upper extremity.

"It is my impression that this patient sustained a mild concussion of the brain as a result of his injury of July 21, 1981. He also probably suffered a musculoligamentous strain of the neck which probably contributed through the mechanism of muscular spasm to his post-traumatic headaches. His main objective residual of the injury is a scar in the right temporal area. Subjectively, the patient apparently still has a fear of heights.

"It is my further opinion that the patient is capable of performing his job as a painter, except for the limitation of not working at heights.

"Estimate of permanent partial residual disability in this case would be difficult, but considering the psychological aspects of the problem, I would offer a figure of five to ten percent of the whole person."

adopted the factual conclusions of the commissioner. The review division stated in its opinion that although there "was certainly evidence on which the commissioner could have found a partial permanent disability of the brain . . . the commissioner did not conclude that such testimony satisfied the 'parameters of reasonable medical probability.' " The review division concluded that it could not disturb the commissioner's conclusions.

The plaintiff appeals from the decision of the compensation review division. See General Statutes § 31-301b. In reviewing the factual determinations of the commissioner, the review division's scope of review is limited. The review division may not disturb the conclusions that the commissioner draws from the facts found unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Fair* v. *People's Savings Bank,* 207 Conn. 535, 538–39, 542 A.2d 1118 (1988). Our scope of review of the actions of the review division is similarly limited. See *Bucko* v. *New London,* 13 Conn. App. 566, 570, 537 A.2d 1045 (1988). The decision of the review division must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed. *Kevorkian* v. *Peter Paul, Inc.,* 3 Conn. App. 335, 488 A.2d 102 (1985) (per curiam). Moreover, no case under the Workers' Compensation Act should be finally determined when this court is of the opinion that through inadvertence or otherwise the facts have not been sufficiently found to render a just judgment. *Dombach* v. *Olkon Corporation,* 163 Conn. 216, 228, 302 A.2d 270 (1972).

The plaintiff had the burden of proving his claim of a permanent partial disability of the brain. See *Domback* v. *Olkon Corporation,* supra, 221. The only evi-

dence he produced was Davey's two reports. Those reports were ambiguous and tentative with respect to that claim.

On the basis of this evidence, the commissioner concluded that the evidence did not bring the plaintiff's claimed disability within the realm of reasonable medical probability. The commissioner was entitled to make that conclusion, particularly since the opinion of the neurosurgeon was based largely on what he concluded was the psychological residue of the accident. The review division upheld the commissioner's conclusions in this case. We conclude that that decision was correct in law and was firmly based on the record before the compensation review division.

There is no error.

In this opinion the other judges concurred.