TERRY D. GILLETTE *v.* TOWN OF MONROE ET AL.
(AC 18673)

O'Connell, C. J., and Schaller and Daly, Js.

Argued September 24—officially released December 28, 1999

*Christopher B. Carveth,* for the appellant (plaintiff).

*Mark J. Sommaruga,* with whom, on the brief, was *Catherine M. Thompson,* for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Terry D. Gillette, appeals from the decision of the workers' compensation review board (board) affirming the commissioner's denial of his claim for hypertension and heart disease benefits pursuant to General Statutes (Rev. to 1993) § 7-433c.[1]

---

[1] General Statutes (Rev. to 1993) § 7-433c (a) provides: "In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusually high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into

On appeal, the plaintiff contends that under § 7-433c, the commissioner improperly considered information not contained in the preemployment physical examination report furnished to the defendant town of Monroe (town)[2] when he denied the plaintiff's claim, and that the board's affirmance was therefore improper. We reverse the decision of the board and remand the case for further proceedings.

The following facts and procedural history are relevant to our disposition of this appeal. Francis P. A. Williams served as the plaintiff's personal physician

such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467."

All references hereafter to § 7-433c are to the 1993 revision of the statute.

[2] Also named as a defendant in this action was the Connecticut Inter-Local Risk Management Agency, the town's workers' compensation insurance administrator.

from 1947 through the mid-1960s. In 1947, Williams referred the plaintiff to Harris P. Shumacker, a physician who performed excision surgery on the plaintiff for a coarctation of the descending aorta and aneurysm.

In 1965, the plaintiff applied to the town for the position of uniformed police officer. As a candidate for employment with the police department, the plaintiff was required to pass a July, 1965 preemployment physical examination to be performed by the police surgeon, in this case, Williams.[3] Following the completion of the examination, Williams forwarded a letter dated August 2, 1965, to the town's chief of police. The substance of the letter was as follows: "[The plaintiff] was given a preemployment physical examination for the position of probationary patrolman on July 22nd. He was found to be in good physical condition and to meet the requirements for the position." Thereafter, the plaintiff was hired by the town on the recommendation of its police board for the position of uniformed police officer.

The plaintiff's employment continued without medical incident until April 27, 1994, at which time he was diagnosed with aortic valve problems and congestive heart failure, which required aortic valve replacement surgery. Thereafter, on February 2, 1995, the plaintiff learned that he also had hypertension.

In February, 1995, the plaintiff filed a claim for compensation pursuant to § 7-433c, which the defendants timely contested. With respect to heart disease benefits, the plaintiff sought compensation for the aortic valve surgery, including all related medical expenses as well as temporary total disability and permanent partial disability ratings. In addition, the plaintiff sought compensation for expenses related to his hypertension, including medications and a permanent partial disability rating. Hearings were held before the trial commissioner on May 21 and August 26, 1996.

---

[3] In addition to being the plaintiff's personal physician and the town's police surgeon, Williams also was a member of the town police board.

The commissioner made the following relevant findings. At the time of the preemployment examination, the plaintiff and Williams were aware that the plaintiff suffered from congenital heart disease, which required corrective surgery in 1947. Williams was in a unique position as the plaintiff's personal physician for many years and, therefore, possessed knowledge of his preexisting heart disease and its consequences. This, along with the fact that Williams was the police surgeon and a member of the police board in the 1960s, could not be ignored and separated from his simple summary letter forwarded on behalf of the plaintiff in August, 1965.

The commissioner concluded that because the plaintiff and Williams held specific knowledge of the plaintiff's congenital heart disease, the determination of whether the preemployment physical examination revealed evidence of heart disease should be based on all of the evidence rather than only on Williams' 1965 report. Applying that standard to the facts as he found them, the commissioner concluded that the plaintiff's preemployment physical examination revealed evidence of heart disease and that consequently, under § 7-433c, he was not entitled to heart disease benefits. The commissioner also applied the rationale of *Suprenant* v. *New Britain*, 28 Conn. App. 754, 759, 611 A.2d 941 (1992) (preemployment examination evidence of either heart disease or hypertension precludes subsequent claim based on either condition), and dismissed the hypertension claim. Both parties subsequently filed motions to correct the trial commissioner's findings, which were denied.

The plaintiff thereafter petitioned the board for review of the commissioner's ruling. The board, with one member dissenting, affirmed the commissioner's ruling. The majority noted that Williams' dual capacity as the plaintiff's physician and the town's police surgeon

understandably caused Williams to believe that elaborating on the plaintiff's medical history in the 1965 report was unnecessary since "a 'yes' or 'no' recommendation regarding the [plaintiff's] fitness for duty would be adequate and wholly determinative." The majority further stated that because § 7-433c was not in effect at the time of the 1965 preemployment physical examination, Williams had no impetus for specifically reporting the plaintiff's heart disease to the town and, therefore, the commissioner was justified in looking outside the four corners of the report. Having reached that conclusion, the majority further concluded that the commissioner's evaluation of the evidence was in no way suspect and that the inference drawn therefrom, namely, that the plaintiff suffered from congenital heart disease in 1965, was reasonable. The board therefore affirmed the trial commissioner's ruling and this appeal followed.

I

The plaintiff asserts that the commissioner improperly considered information not contained in the preemployment physical examination report in concluding that the plaintiff had not established entitlement to hypertension and heart disease benefits under § 7-433c. The plaintiff also contends that the board improperly affirmed the commissioner's decision. We agree on both counts.

We first set forth the standards governing our review of decisions by the board. "[W]hen a decision of a commissioner is appealed to the [board], the [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. *Fair* v. *People's Savings Bank*, 207 Conn. 535, 538–39, 542 A.2d 1118 (1988). The commissioner has the power and duty, as the trier of fact, to determine the facts. *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988). The

conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Adzima* v. *UAC/Norden Division,* [177 Conn. 107, 118, 411 A.2d 924 (1979)]. [*Castro* v. *Viera,* supra, 435]. Our scope of review of the actions of the review [board] is similarly limited. *DeBarros* v. *Singleton,* 21 Conn. App. 107, 110, 572 A.2d 69 [cert. denied, 215 Conn. 808, 576 A.2d 538] (1990)." (Internal quotation marks omitted.) *Vanzant* v. *Hall,* 219 Conn. 674, 677, 594 A.2d 967 (1991). "Where, however, the appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. See *Davis* v. *Norwich,* 232 Conn. 311, 317, 654 A.2d 1221 (1995) (state agency not entitled to special deference when its construction of statute has not undergone previous judicial scrutiny)." *Doe* v. *Stamford,* 241 Conn. 692, 697, 699 A.2d 52 (1997).

Because the resolution of this appeal presents a novel issue of statutory construction, we further set forth the well established principles of statutory construction on which we rely. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Castagno* v. *Wholean,* 239 Conn. 336, 339, 684 A.2d 1181 (1996).

Section 7-433c (a) provides in relevant part that "in the event . . . a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, *which examination failed to reveal any evidence of hypertension*

*or heart disease*, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care . . . ."[4] (Emphasis added.) This language clearly and unambiguously mandates that for the plaintiff to be foreclosed from the benefits of the statute, the results of his preemployment physical examination must contain evidence of hypertension or heart disease. The commissioner's findings show that Williams' August 2, 1965 report is the only source from which we can ascertain the results of the preemployment physical examination. It is beyond doubt that the language of that report does not indicate in any way that the plaintiff exhibited symptoms consistent with either hypertension or heart disease. We therefore must conclude that the plaintiff's examination did not "reveal any evidence" of either condition.

The decision of the trial commissioner also is inconsistent with other parts of the statute. Section 7-433c (a) further provides that "[i]f successful passage of such a physical examination was, at the time of . . . employment, required as a condition for such employment, *no proof or record of such examination shall be required as evidence in the maintenance of a claim . . . .*" (Emphasis added.) To say that an examination report, such as the one in the present case, that makes no mention of either hypertension or heart disease, can be disregarded, while a plaintiff whose examination is not reported at all is afforded the presumption of compensability, would render the statute illogical and inconsistent.

---

[4] At the time the plaintiff first sustained a "condition or impairment of health caused by hypertension or heart disease" while in the employ of the town, namely, April, 1994, and the time the plaintiff filed his claim, namely, February, 1995, the text of § 7-433c was the same.

Furthermore, an interpretation allowing the consideration of evidence not contained in the preemployment physical examination would frustrate the purpose of § 7-433c as set forth by the legislature in the statute. Second-guessing a report that gave the plaintiff a clean bill of health, on which he may have justifiably relied, would effectively deprive him of the benefit conferred by the legislature and certainly would not "act as an inducement in attracting and securing persons"[5] for employment as regular members of paid police departments. General Statutes (Rev. to 1995) § 7-433c (a).

In reaching the conclusion that, in this case, the evidence called for in § 7-433c must be contained, if at all, in the four corners of Williams' report, we are mindful of the board's concern that the statute at issue was not in effect at the time of the plaintiff's preemployment physical examination. A review of the history of the relevant heart and hypertension legislation leads us to conclude that the town was on notice that whether the plaintiff exhibited symptoms consistent with heart disease or hypertension at the time of his hire had possible future compensatory ramifications.

"In 1951, the General Assembly enacted a statute providing that any impairment of health caused by hypertension or heart disease resulting in the total or partial disability of a uniformed member of a paid municipal fire department who successfully passed a physical examination on entry into such service shall be presumed to have been suffered in the line of duty. [General Statutes (Sup. 1951)] § 175b. The rebuttable presumption afforded to firemen was, in 1953, made applicable to regular members of paid, municipal police departments; [General Statutes (Sup. 1953)] § 308c; and, in 1955, was applied to situations where death, as well as disability, results. [General Statutes (Sup. 1955)] § 407d.

---

[5] See footnote 1.

This provision, which was repealed and reenacted in 1961 as General Statutes § 7-433a; Public Acts 1961, No. 330, §§ 1, 2; was amended by the legislature in 1967 making it explicit that the statute applies whether the condition occurs while the policeman or fireman is on duty or off duty at the time. Public Acts 1967, No. 770, § 1." *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 667–68, 425 A.2d 131 (1979). Similar to § 7-433c, § 7-433a provided compensation to those whose physical "examination failed to reveal evidence of" hypertension or heart disease. Public Acts 1961, No. 61-330, § 1. Because the plaintiff's preemployment physical examination took place in 1965, when § 7-433a was in force, the town's police surgeon had the same incentive to give, and the town had the same duty to ensure, a thorough examination and production of a thorough report thereof with any findings relative to the plaintiff's condition regarding heart disease and hypertension, as they would have had if § 7-433c had been in force. Furthermore, the fact that Williams wore multiple hats in this case certainly cannot serve to obviate his responsibilities to perform a thorough examination and to document comprehensive relevant findings.[6]

For the reasons stated, the board improperly affirmed the commissioner's denial of the plaintiff's application for benefits related to his heart disease on the ground that the preemployment physical examination revealed evidence of heart disease. Accordingly, the rationale of *Suprenant* v. *New Britain*, supra, 28 Conn. App. 759, cannot bar the plaintiff's claim with respect to hypertension.

---

[6] Although it is not necessary to our holding, we note, moreover, that if Williams' multiple roles have any bearing on the duty of the parties in this case, it would seem to militate in favor of specificity in his report, which, in turn, would tend to support an inference contrary to that reached by the commissioner and the board, namely, that Williams did not note any evidence of either of the conditions because such evidence was not present.

## II

In their brief, the defendants urge two alternate grounds for affirming the commissioner's denial of the plaintiff's claims. The defendants argue that (1) the claim for heart disease benefits is time barred pursuant to General Statutes § 31-294c and (2) because the plaintiff's preemployment physical examination revealed evidence of heart disease, the plaintiff cannot recover benefits for either hypertension or heart disease. We are not persuaded.

## A

The defendants first claim that the denial of that portion of the plaintiff's claim seeking benefits for heart disease can be affirmed because it is time barred pursuant to § 31-294c.[7] We disagree.

Because the plaintiff's preemployment physical examination revealed no evidence of heart disease and because he was entitled to rely on the clean bill of health assigned to him in the 1965 report, we cannot say that, subsequent to his hiring, he was under any duty to file a claim for heart disease benefits any sooner than when the condition was first detected. The finding and dismissal by the trial commissioner indicates that the plaintiff was diagnosed with aortic valve problems and congestive heart failure in April, 1994. Therefore, the plaintiff's claim for heart disease benefits, filed less than one year later, in February, 1995, was timely under § 31-294c. Accordingly, the plaintiff's claim for heart disease benefits is compensable because his preemploy-

---

[7] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . ."

ment physical examination failed to reveal any evidence of heart disease.

Although the defendants did not argue against it, we also point out, for the benefit of future proceedings, that the portion of the plaintiff's claim relative to hypertension benefits also is timely. Again, the plaintiff filed his claim in February, 1995. The stipulation of facts entered into by the parties and made a part of the commissioner's finding and dismissal, states that the plaintiff learned of his hypertension condition that same month, well within the one year period preceding the filing of his claim. Thus, the claim is timely. Furthermore, because our analysis in part I regarding heart disease is equally applicable to the determination of whether the 1965 examination revealed evidence of hypertension, we conclude that the plaintiff's examination revealed no such evidence. Therefore, the plaintiff's claim for hypertension benefits also is compensable.

B

The defendants also argue that because the plaintiff's preemployment physical examination revealed evidence of heart disease, the plaintiff is precluded from recovering benefits for hypertension as well as heart disease. In support of their argument, the defendants rely on the rationale of *Suprenant* v. *New Britain,* supra, 28 Conn. App. 759, for the proposition that if evidence of *either* hypertension or heart disease is revealed by the preemployment physical examination, the plaintiff is barred from claiming benefits for either condition. In light of our conclusion in part I, we conclude that this ground for affirmance also has no merit.

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to remand the matter to the trial commissioner for a determination of the amount of compensation.

In this opinion the other judges concurred.