## DANIEL D'AMICO *v.* DEPARTMENT OF CORRECTION
## (AC 22242)

Foti, Dranginis and Flynn, Js.

---

Argued September 13—officially released November 26, 2002

*Harvey L. Levine,* for the appellant (plaintiff).

*Douglas L. Drayton,* for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Daniel D'Amico, appeals from the decision of the workers' compensation review board (board) affirming the August 28, 2000 finding and award of the workers' compensation commissioner for the fifth district (commissioner), in which the commissioner dismissed the plaintiff's claim for total disability benefits. The plaintiff claims that the board improperly affirmed the dismissal because (1) the commissioner could not reasonably or legally deny the claim for total disability benefits on the basis of the record before him, and (2) the commissioner improperly denied the plaintiff's motion to correct the commissioner's findings. We disagree and affirm the decision of the board.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff was injured on September 24, 1992, in an altercation with an inmate while employed as a correction officer with the department of correction. The plaintiff suffered physical injuries to his neck, back, shoulders and arms. In addition to his orthopedic injuries, the plaintiff sought workers' compensation benefits for related medical conditions,

namely, hypertension, fibromyalgia and reflex sympathetic dystrophy of the right arm, as well as for related psychiatric conditions, including posttraumatic stress disorder and depression.

The commissioner issued an initial finding and award on April 12, 1999. He found that in addition to the compensable orthopedic injuries, the defendant department of correction should pay for all reasonable and necessary medical expenses resulting from the fibromyalgia and the reflex sympathetic dystrophy. Further, the commissioner found that the plaintiff was entitled to treatment for posttraumatic stress disorder and depression, including treatment to be received at the Spaulding Rehabilitation Center, a Massachusetts inpatient pain management facility.[1] The commissioner denied the plaintiff's claim for compensation benefits for hypertension.

Pursuant to an approved form 36,[2] the state discontinued its payment of total disability benefits and began paying the plaintiff permanent partial disability benefits as of March 28, 1995. The commissioner found that this was an appropriate action. Only one physician, Mario Leicach, believed that the plaintiff was completely disabled physically. The commissioner found that as to work capacity and disability, the opinions of Steven

[1] An appeal to the board from that prior finding and award was brought by the defendant, which argued that there was insufficient evidence to support the commissioner's authorization of treatment at that facility. The board affirmed the commissioner's decision, and no subsequent appeal to this court was taken. See *D'Amico* v. *Dept. of Correction*, 4029 CRB-5-99-4 (May 18, 2000).

[2] "Form 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." *Imbrogno* v. *Stamford Hospital*, 28 Conn. App. 113, 120 n.4, 612 A.2d 82, cert. denied, 223 Conn. 920, 615 A.2d 507 (1992).

Beck, the plaintiff's treating physician, and Donald Grayson, a psychiatrist, and an evaluation conducted on behalf of the state at Gaylord Hospital were more credible.

Gaylord Hospital had conducted its evaluation on March 28, 1993, and recommended that the plaintiff receive psychological treatment along with vocational training, but that the plaintiff's physical condition should not preclude employment. On January 5, 1995, Beck opined that the plaintiff had reached maximum medical improvement and should pursue a limited work return. Grayson, who evaluated the plaintiff on March 11, 1996, at the request of the commissioner, indicated that the plaintiff's depression would not preclude him from working.

The commissioner also found that since the injury, the plaintiff had finished his bachelor's degree and completed a master's degree in business administration through correspondence courses, including researching and typing lengthy research papers. On the basis of those opinions and the plaintiff's ability to further his education, the commissioner found that the plaintiff had reached maximum medical improvement from a physiological standpoint and that the plaintiff had some work capacity.

Because there was no evidence, however, that the plaintiff had reached a psychiatric maximum medical improvement point, the commissioner made his conclusion approving the reduction to permanent partial disability without prejudice and subject to a possible later claim of total disability "based upon a change in the [plaintiff's] condition and/or the opinions of [Robert F.] Swords," the plaintiff's appointed treating physician for posttraumatic stress and depression. The plaintiff did not seek review of that first finding and award.

Consequently, the plaintiff later sought to have the commissioner award him total disability benefits because of the plaintiff's alleged lack of work capacity due to his psychiatric condition. The commissioner conducted another formal hearing on April 3, 2000, in which he found the following additional facts.

Swords testified by deposition that the plaintiff's condition had "waxed and waned" during the course of treatment. He admitted that there might well have been periods of time in which the plaintiff was capable of work, although more often than not he was unemployable. Swords' written report of October 22, 1998, stated that as of the time of the report and into the indeterminate future, the plaintiff was unemployable.

Beck, who earlier had been supportive of the plaintiff's work capacity, found that as of January 29, 2000, the plaintiff's capabilities were severely limited. When pressed, however, he did believe him capable of "part-time, infrequent employment [that] was self-directed."

The plaintiff testified that he had been searching for work for the last eight years. He had found a flexible job entering information into a computer. He further testified that he was able to drive a car, help his children with schoolwork, occasionally shop for groceries and, at times, do other household chores.

On August 28, 2000, the commissioner produced another formal finding and award, which is the subject of this appeal. The commissioner concluded, on the basis of the plaintiff's testimony regarding his activities, the testimony of Swords and Beck, and the evidence underlying the April 12, 1999 finding and award, that the plaintiff's condition had not changed in such a way as to support a claim for total disability. On the basis of that conclusion, the commissioner dismissed the plaintiff's claim for total disability.

The plaintiff filed a motion to correct the commissioner's August 28, 2000 finding and award, which the commissioner denied. The plaintiff sought review by the board of both that decision and the August 28, 2000 finding and award. The board affirmed the commissioner's decisions in an opinion dated August 3, 2001. The plaintiff then appealed to this court. We now affirm the board's decision.

Before reaching the substance of the plaintiff's appeal, we first set out our well settled standard of review in workers' compensation cases. "As a preliminary matter, we note that when a decision of a commissioner is appealed to the review division, the review division is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts." (Internal quotation marks omitted.) *Ricigliano* v. *J. J. Ryan Corp.*, 53 Conn. App. 158, 160, 728 A.2d 1161 (1999), appeal dismissed, 252 Conn. 404, 746 A.2d 787 (2000). "It is the power and the duty of the commissioner, as the trier of fact, to determine the facts." *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988). "[T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 286, 714 A.2d 60 (1998).

"The review [board] may not disturb the conclusions that the commissioner draws from the facts found unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *DeBarros* v. *Singleton*, 21 Conn. App. 107, 110, 572 A.2d 69, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990). In other words, "[t]hese conclusions must stand unless they could not reasonably or logically be reached on the subordinate facts." *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 145, 291 A.2d 743 (1972).

"Our scope of review of the actions of the review [board] is similarly limited." (Internal quotation marks omitted.) *Ricigliano* v. *J. J. Ryan Corp.*, supra, 53 Conn. App. 161. "The decision of the review [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." *DeBarros* v. *Singleton*, supra, 21 Conn. App. 110.

I

The plaintiff's essential claim on appeal is that the board improperly affirmed the commissioner's conclusion that the plaintiff had some degree of work capacity and was not entitled to total disability benefits because the commissioner's findings were unreasonable and legally inconsistent with the subordinate facts. We disagree.

The plaintiff is entitled to total disability benefits under General Statutes § 31-307 (a) only if he can prove that he has a "total incapacity to work." General Statutes § 31-307 (a). "The plaintiff [bears] the burden of proving an incapacity to work . . . ." *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 454, 774 A.2d 992 (2001). Our Supreme Court has defined total incapacity to work as "the inability of the employee, because of his injuries, to work at his customary calling *or at any other occupation which he might reasonably follow*." (Emphasis added.) *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 456, 78 A.2d 339 (1951).

In the April 12, 1999 finding and award, the commissioner found that the plaintiff was not entitled to total disability benefits on the basis of his physical condition, but left open the question of whether the plaintiff might be entitled to them on the basis of his psychological condition. In the August 28, 2000 finding and award, the commissioner made reference to medical evidence

supporting both sides of that issue. As previously stated, however, it is the commissioner's duty to evaluate the weight of the medical evidence and the credibility of witnesses; see *Keenan* v. *Union Camp Corp.*, supra, 49 Conn. 286; and the commissioner's conclusions cannot be reversed simply because the plaintiff's own evaluation of the findings causes him to reach a contrary conclusion. Unless the factual findings on which the commissioner bases his conclusion are clearly erroneous, or there is no evidence in the record to support the conclusion, the conclusion must stand.

The plaintiff argues that although he presented competent psychological evidence that he was totally unemployable, the state offered no competent evidence to the contrary on which the commissioner legally and reasonably could base his conclusion. On the basis of our review of the findings, however, we disagree.

The plaintiff may have provided evidence capable of proving his incapacity, but that does not compel the commissioner to accept that evidence as fact. See *Tartaglino* v. *Dept. of Correction*, 55 Conn. App. 190, 195–96, 737 A.2d 993, cert. denied, 251 Conn. 929, 742 A.2d 364 (1999). "It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert." (Citation omitted.) Id., 195.

There was sufficient evidence from which the commissioner as the trier of fact could have concluded that the plaintiff had some work capacity or capacity for employment and, therefore, that the plaintiff was not entitled to total disability benefits. Both Swords and Beck, although finding that the plaintiff was practically unemployable, did recognize the possibility of employability. Grayson believed that the plaintiff's psychological condition did not make him unemployable. Perhaps

the most significant evidence that the plaintiff had some capacity for employment was his testimony as to his daily activities, to which the commissioner reasonably could have attached great weight in reaching his conclusion not to extend benefits. Contrary to the plaintiff's assertion, therefore, there was competent evidence on which the commissioner could have legally and reasonably based his conclusion.

The plaintiff makes much of typographical errors in the commissioner's findings. The plaintiff argues that the commissioner's findings incorporated dates that have no basis in the record. For example, paragraph A of the commissioner's August 28, 2000 finding and award of dismissal states:

"Based upon the [plaintiff's] testimony with regard to his activities, as well as his desire and efforts to secure work since September 24, 1992, the testimony of Dr. Swords and Beck, as well as the April 12, 1999 finding and award, the [plaintiff's] condition, subsequent to March 28, 1999, has not significantly changed sufficient to support a claim for total disability."

The plaintiff argues that the date March 28, 1999, is an arbitrary date that appears nowhere in the record. He argues that because the date "has no factual significance," the commissioner's conclusion as to disability is unreasonably based on a fact not in the record. Upon review of the record and when read in context, however, the date at issue likely was a result of a typographical error.

In his April 12, 1999 finding and award, the commissioner found that the plaintiff's total disability benefits properly were discontinued as of March 28, 1995, at which time the plaintiff began receiving partial disability benefits. In paragraph A of the August 28, 2000 finding and award, the commissioner's language should be read to refer to March 28, 1995, which was the date

when full benefits were received last. Logically, then, March 28, 1999, was not a random date with no basis in the record, but rather should have been March 28, 1995.

Because there was adequate evidence in the record to support the commissioner's conclusion, which was legally and reasonably based on his judgment of the credibility of the testimony of the witnesses and his evaluation of the medical evidence, the board was correct to affirm the decision of the commissioner.

## II

Finally, the plaintiff claims that the commissioner improperly denied the plaintiff's motion to correct the commissioner's August 28, 2000 finding and dismissal and that the board should have ordered the commissioner to correct his finding. We are not persuaded.

In his motion to correct, the plaintiff asks the commissioner to change his findings in the following ways: (1) that the commissioner add the phrase, "he just couldn't do it anymore," to his finding that the plaintiff had found a job inputting information into a computer, (2) that the commissioner change a typographical error in his finding concerning Swords' October 22, 1998 report, (3) that the commissioner find that there was significant change to support a claim for total disability and (4) that total disability be granted, not denied.

"We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted." (Citation omitted; internal quotation marks omitted.) *Mulroy* v. *Becton Dickinson Co.*, 48 Conn. App. 774, 782, 712 A.2d 436 (1998). "A material fact is one that

will affect the outcome of the case." *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 599, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994).

In his motion to correct, the plaintiff merely seeks to have the commissioner conform his findings to the plaintiff's view of the facts. It is the commissioner, however, who must determine which portions of a witness' statement or what medical opinions are credible and, therefore, helped form the basis of the commissioner's conclusion. It was within the discretion of the commissioner to evaluate the plaintiff's statement that he "just couldn't do it anymore" and to decide whether to include that statement in his findings. The plaintiff cannot expect the commissioner to substitute the plaintiff's conclusions for his own.

Arguably, the plaintiff's only valid claim in his motion to correct addressed a typographical error in paragraph sixteen of the commissioner's findings, which reads: "On October 22, 1998, Dr. Swords issued a report indicating that the [plaintiff] remains totally employable at this time and for the indeterminate future." The record shows that Swords' report actually stated that the plaintiff "remains totally unemployable." Arguably, if the commissioner actually had found that Swords' report stated "employable" and relied on that in making his determination that the plaintiff had a work capacity, then the plaintiff might argue that the commissioner had relied on a clearly erroneous fact and that his conclusions must be overturned as an unreasonable factual inference.

The commissioner's ultimate conclusion, however, states that it was the *testimony* of Swords—perhaps his deposition statement that the plaintiff had "periods of employability"—and not the *report* of Swords that the commissioner states he in part relied on in finding that there was no significant change in the plaintiff's

condition to warrant a claim for total disability. Consequently, even if we were to infer such an argument from the plaintiff's brief, the plaintiff still would fail to show that the commissioner had relied on any erroneous material facts in reaching his conclusion.

As the board points out in a footnote to its opinion, however, and as the plaintiff states in his brief to this court, the language at issue appears to be nothing more than a typographical error. The paragraphs preceding that statement show that Swords had testified in an early 1998 deposition that the plaintiff was unemployable and that Swords had testified that there may have been periods of employability, but, on the whole, the plaintiff was unemployable. Therefore, given those findings, the wording of paragraph sixteen that the plaintiff *"remains* totally employable" is logically inconsistent and clearly suggests that it was a typographical error.

The plaintiff offers no legal precedent or argument as to why the commissioner must grant a motion to correct to change something that both sides recognize as a typographical error. We agree with the board that scrivener's errors should generally be overlooked on review. As previously explained, the typographical error regarding Swords' report does nothing to change the fact that other evidence supports the commissioner's conclusion. Even if the commissioner had made the proposed changes or additions to his findings, they would not have changed his final conclusion that the plaintiff had some work capacity and, therefore, should not receive full disability benefits.

We conclude that the commissioner did not abuse his discretion in denying the plaintiff's motion to correct and that the board did not improperly affirm that decision. Therefore, because the August 28, 2000 finding and award of dismissal was legally and reasonably supported by the subordinate facts and included all mate-

rial facts that were admitted or undisputed, we hold that the commissioner did not improperly conclude that the plaintiff was not entitled to continued total disability benefits.

The decision of the workers' compensation review board is affirmed.

In this opinion DRANGINIS, J., concurred.

FLYNN, J., dissenting. I respectfully dissent.

The principal issue before the commissioner was whether the plaintiff was totally disabled from employment arising out of and in the course of his employment as a correction officer. His work-related injury resulted from an attack by a prisoner. The commissioner, in an earlier proceeding, had found that the plaintiff suffered from posttraumatic stress syndrome.

In his findings of subordinate facts, the trial commissioner found, as a fact, that Dr. Swords, the plaintiff's physician, determined that the plaintiff was employable.[1] This was simply not the case. Dr. Swords, instead, had opined the opposite. Swords stated that the plaintiff was *unemployable*. The commissioner's finding about Dr. Swords' opinion was, therefore, clearly erroneous and found without evidence.

Such a finding would, nonetheless, stand unless the plaintiff moved to correct it in accordance with § 31-

---

[1] Section 31-301-3 of the Regulations of Connecticut State Agencies provides: "The finding of the commissioner should contain only the ultimate relevant and material facts essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties. It should not contain excerpts from evidence or merely evidential facts, nor the reasons for his conclusions. The opinions, beliefs, reasons and argument of the commissioner should be expressed in the memorandum of decision, if any be filed, so far as they may be helpful in the decision of the case."

301-4 of the Regulations of Connecticut State Agencies.[2]
See *Vanzant* v. *Hall*, 219 Conn. 674, 679, 594 A.2d 967
(1991); *Mack* v. *Blake Drug Co.*, 152 Conn. 523, 525,
209 A.2d 173 (1965). Here, however, the plaintiff did
request the commissioner to correct what all parties to
this case agree was an erroneous finding concerning
the opinion of Dr. Swords. However, the commissioner
refused to do so. Once the commissioner so refused,
he became wedded to the error. The plaintiff properly
preserved this error for review by the compensation
review board.

In its written decision, the board attempted to dismiss
this appellate issue in a footnote, stating that Dr.
Swords' finding was an obvious typographical error.
This perfunctory dismissal, however, does not correct
the commissioner's finding, which was clearly errone-
ous. Although the board recognized, as did all of the
parties in this case, that Swords was of the opinion that
his patient was *unemployable*, it would be logically
impossible for the board or this court to conclude that
the commissioner also recognized this error, especially
in light of the fact that he denied the plaintiff's motion
to correct. If, as the board implicitly assumed, the com-
missioner recognized his error, why would he not cor-
rect it once moved to do so?

A mistaken belief in the existence of a fact that does
not truly exist is an error. Such an error is not grounded

[2] Section 31-301-4 of the Regulations of Connecticut State Agencies pro-
vides: "If the appellant desires to have the finding of the commissioner
corrected he must, within two weeks after such finding has been filed,
unless the time is extended for cause by the commissioner, file with the
commissioner his motion for the correction of the finding and with it such
portions of the evidence as he deems relevant and material to the corrections
asked for, certified by the stenographer who took it, but if the appellant
claims that substantially all the evidence is relevant and material to the
corrections sought, he may file all of it so certified, indicating in his motion
so far as possible the portion applicable to each correction sought. The
commissioner shall forthwith, upon the filing of the motion and of the
transcript of the evidence, give notice to the adverse party or parties."

in reality but is contrary to the actual fact. Mistakes of another kind can occur where one accurately apprehends the reality of a situation but in recording that apprehension unintentionally either hits the wrong key or misspeaks using a word opposite to that intended. This latter kind of error is often called a typographical error. See American Heritage Dictionary of the English Language (4th Ed. 2000). The commissioner's use of the word employable to describe Dr. Swords' report about the plaintiff's condition lost any claim to being an unintentional typographical error when he refused to correct this erroneous finding in response to a motion to correct, which brought to his attention that Dr. Swords had said the opposite of what the commissioner had recorded in his finding. Since there was no dispute about what Dr. Swords had said in his report, as an undisputed material fact, it should have been correctly found.

This court has no way of knowing, nor did the board, what weight the commissioner gave his erroneous finding or whether his decision rose or fell based upon it. Because there is no way for us to make this determination, I would reverse the decision of the board and remand the case to the workers' compensation commissioner for rehearing.

Our workers' compensation law is remedial and intended to confer benefits the law provides for those suffering injuries arising out of and in the course of their employment, whether these sequelae are physical or mental. See *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 40–43, 787 A.2d 541 (2002) (act must be liberally construed, and mental injury that arises from compensable work-related physical injury is covered).

A decision denying these benefits must rest on facts that reasonably could be found or inferred from the

evidence. Clearly erroneous findings of fact cannot support a denial of those benefits.

Accordingly, I dissent.