RICHARD GILLIS *v.* WHITE OAK
CORPORATION ET AL.
(AC 17446)

Landau, Spear and Sullivan, Js.

Argued March 31—officially released August 4, 1998

*Scott Wilson Williams*, for the appellants (named defendant et al.).

*Ross T. Lessack*, for the appellee (plaintiff).

*Opinion*

SPEAR, J. The defendants, White Oak Corporation (White Oak) and its insurer, Liberty Mutual Insurance Company (Liberty),[1] appeal from a decision of the workers' compensation review board (board) affirming a finding and award that was rendered in favor of the plaintiff, Richard Gillis, by the workers' compensation commissioner (commissioner). White Oak and Liberty

---

[1] White Oak and Liberty are the only defendants involved in the appeal. In the underlying action, however, two of the plaintiff's previous employers, Yonkers/D'Addario Joint Venture and Waterbury Construction Company, were also defendants.

claim that the commissioner improperly (1) disregarded the medical opinion of an expert who had examined the plaintiff pursuant to an order from the commissioner and (2) found that an injury that occurred during the plaintiff's employment with White Oak increased the plaintiff's permanent partial disability and caused the need for knee surgery in January, 1987, as well as future knee replacement surgery.[2] We affirm the board's decision.

The record reveals the following relevant facts and procedural history. The plaintiff, a construction laborer, has historically suffered from degenerative arthritis in both knees, most significantly in his right knee. On July 7, 1981, the plaintiff sustained an injury to his right knee while working for Yonkers/D'Addario Joint Venture.[3] On November 6, 1986, the plaintiff sustained a second injury to his right knee while working for White Oak.[4] The plaintiff injured his right knee a third time on April 20, 1992, while working for Waterbury Construction Company.[5] Formal hearings were subsequently held by

[2] At oral argument, there was discussion as to whether White Oak and Liberty raised their second claim, a sufficiency claim, before the compensation review board. There was further discussion concerning whether White Oak and Liberty asserted the lack of a final judgment as the basis for remanding the insufficiency claim to the board for a determination on that issue. In support of their assertion that the sufficiency claim was properly preserved and both raised before and briefed to the board, White Oak and Liberty directed this court's attention to pages twenty-two and fifty-three of the record, wherein one of their reasons for appeal to the board stated: "The conclusion that White Oak and Liberty Mutual have responsibility for the [plaintiff's] knee condition is legally inconsistent with the subordinate facts found." Our careful review of the record reveals that the board did, in fact, implicitly address White Oak and Liberty's sufficiency claim by way of affirming the commissioner's decision following the April 18, 1996 amended and articulated finding and award.

[3] This injury resulted in a 7.5 percent permanent partial disability of the plaintiff's right knee, as evidenced by a voluntary agreement between the parties on October 14, 1982.

[4] While unloading bales of hay from a truck, the plaintiff slipped and his right leg twisted when it caught on the truck's ladder.

[5] In April, 1992, the plaintiff, while loading blocks, fell to the ground on his right knee from scaffolding that was several feet above the ground.

the commissioner to determine (1) compensability of the November 6, 1986 right knee injury, (2) responsibility for both a 1987 knee surgery and part of the plaintiff's permanent partial disability and (3) responsibility for a recommendation that the plaintiff undergo surgery for a total right knee replacement. The record reveals medical testimony from several of the plaintiff's examining and treating physicians regarding the physical condition of and prognosis for the plaintiff's right knee after each of the 1981, 1986 and 1992 injuries. More specifically, there was conflicting medical testimony regarding the percentage of responsibility that was attributable to each of the 1981, 1986 and 1992 injuries with respect to the need for both the 1987 surgery and future knee replacement surgery.[6] Pursuant to General Statutes § 31-294f (a),[7] the commissioner ordered that the plaintiff submit to an examination by Robert L.

---

[6] Our review of the record reveals that Glen Taylor, a physician, stated that "the 1981 injury exacerbated or aggravated the [plaintiff's] underlying preexisting arthritic condition . . . and [the plaintiff's] 1987 symptoms and the 1987 surgery are the result of the preexisting arthritis and not to [the] 1981 injury." Richard Matza, an orthopedic surgeon, stated that "the 1981 initiating injury caused a defect within the (knee) joint and . . . the subsequent injuries, 1986, 1987, 1991, exacerbated or aggravated the condition." Matza further stated that the plaintiff had a 75 percent permanent partial disability of the right knee, 50 percent of which predated the April, 1992 injury and 25 percent of which was attributable to the 1992 injury. Kevin Lynch, an orthopedic surgeon, stated that the plaintiff needed a total right knee replacement regardless of the 1992 injury. Lynch assigned a 47 percent permanent partial disability to the plaintiff's right knee, with 5 percent attributable to the 1992 injury. Robert L. Fisher, an orthopedic surgeon who was ordered by the commissioner to examine the plaintiff, stated that the 1986 injury was relatively trivial, did not accelerate by any significant period of time the need for a total right knee replacement and assigned 40 percent permanent partial disability of the right knee, with 5 percent attributable to the 1981 injury, 5 percent attributable to the 1992 injury and 30 percent attributable to the plaintiff's preexisting degenerative arthritis.

[7] General Statutes § 31-294f (a) provides in relevant part that a claimant "shall submit himself to examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. . . ."

Fisher, an orthopedic surgeon. Fisher stated that the plaintiff's November 6, 1986 right knee injury was "relatively trivial," did not accelerate by any significant amount of time the need for knee replacement surgery and that, in fact, the plaintiff's need for a total right knee replacement resulted from preexisting, degenerative arthritis. On October 4, 1994, the commissioner rendered a finding and award in favor of the plaintiff, ruling that the 1981 and 1986 injuries were "contributing causes to the aggravation of the underlying preexisting arthritic condition accelerating, albeit not by a substantial period of time, but accelerating nonetheless, the need for a total right knee replacement."[8] The commissioner further found that the 1986 injury was responsible for both the plaintiff's 1987 surgery and a percentage of the permanent partial disability of the plaintiff's right knee. Because the commissioner's decision did not explain his apparent disregard of Fisher's medical opinion, the board remanded the case for an articulation of the commissioner's basis for disregarding Fisher's opinion.

On remand, the commissioner rendered an amended articulation of his finding and award, wherein he stated that "[t]he November 6, 1986 injury was a new, discrete, identifiable event, which was the agent of the exacerbation of [the plaintiff's] underlying arthritic condition and necessitated the need for the surgery on January 5, 1987." Further, the commissioner specifically found that "while Dr. Fisher was of the opinion that the [plaintiff's] 1986 incident was *relatively* trivial and [the plaintiff's] work-related injuries were not responsible for

[8] At oral argument, White Oak and Liberty maintained that the commissioner, in adopting Fisher's opinion, "turned it on its head" by misinterpreting Fisher's testimony that the November, 1986 injury was "relatively trivial" and "did not accelerate [by] any significant period of time the need for the total knee replacement" to conclude that the 1986 incident was *a* cause, albeit not a *major* cause, of the plaintiff's need for a future knee replacement surgery.

accelerating, by any *significant* period of time, the need for the total knee replacement, [the plaintiff's] work-related injuries of 1981 and 1986 did, in fact, accelerate the May 17, 1991 total knee replacement,[9] thereby establishing the requisite medical and legal causal connection between the July 7, 1981 and November 6, 1986 work-related injuries and the need for a total knee replacement . . . ." (Emphasis in original.)[10] White Oak and Liberty appealed to the board from that decision. The board subsequently affirmed the commissioner's articulated finding and award. This appeal followed.

I

White Oak and Liberty first argue that the commissioner's October 4, 1994 decision impermissibly disregarded Fisher's medical opinion that the November, 1986 injury was relatively trivial and did not significantly accelerate the need for either the plaintiff's 1987 knee surgery or the contemplated knee replacement surgery. Specifically, White Oak and Liberty contend that in the amended finding and award the commissioner "rejected Dr. Fisher's conclusion that the 1986 incident was not a causal factor by transforming the language used by Dr. Fisher—that the 1986 incident was relatively trivial and that it did not accelerate the need for the knee replacement by any significant period of time—into a

---

[9] In his October 4, 1994 finding and award, the commissioner referred to the plaintiff's "contemplated right knee total replacement." We note, however, that in his 1996 amended and articulated finding and award the commissioner referred to a "May 17, 1991 total knee replacement." There is no evidence before us that clarifies this factual discrepancy, which was neither raised by the parties in their briefs nor addressed at oral argument. There was, however, evidence in the record that on May 17, 1991, Matza recommended that the plaintiff "have a total knee replacement on his right knee . . . sometime in the future."

[10] The commissioner determined that the plaintiff had a 47 percent permanent partial disability of the right knee, of which 7.5 percent was attributable to the 1981 injury, 17.5 percent was attributable to the 1986 injury, 5 percent was attributable to the 1992 injury and an additional 17 percent was attributable equally to each of the 1981, 1986 and 1992 injuries.

subordinate factual basis for his legal conclusion that the 1986 incident was a proximate causal factor." In their reply brief, however, White Oak and Liberty emphasize that their claim is not that the commissioner must, in all cases, follow the opinion of his examiner, but that his failure to articulate a reasonable basis for failing to follow his examiner's opinion in this case is erroneous as a matter of law. We disagree.

White Oak and Liberty rely on *Iannotti* v. *Amphenol/ Spectra-Strip*, 13 Conn. Workers' Comp. Rev. Op. 319 (1995), aff'd, 40 Conn. App. 918, 669 A.2d 637 (1996), for the proposition that "unless there is a reasoned, articulated basis for rejecting the opinion provided by the commissioner ordered examiner, with corresponding subordinate facts that support the rejection, a decision that does not incorporate the conclusion of a commissioner ordered examiner is erroneous as a matter of law."[11] White Oak and Liberty maintain that the commissioner's decision is erroneous as a matter of law, not because he failed to follow Fisher's medical opinion, but because he failed to articulate his reasons for disregarding Fisher's opinion. We are unpersuaded.

Preliminarily, "[w]e accord great deference to the construction given to [workers' compensation law] by the commissioner and the review [board] because they are both charged with its enforcement." *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993); *Mulroy* v. *Becton Dickinson Co.*, 48 Conn. App. 774, 780, 712 A.2d 436 (1998). In keeping with this principle, we affirmed the board's decision in *Iannotti* v. *Amphenol/Spectra-Strip*, supra, 40 Conn. App. 918. *Iannotti* stands for the proposition that "when a commissioner orders a medical examination, there is usually an expectation among the parties that said examination

---

[11] This case was not decided by the board until April, 1995. The commissioner, therefore, did not have the benefit of the board's guidance on this issue when he drafted the October, 1994 finding and award.

will provide strong guidance to the commissioner. Where a commissioner chooses not to adopt the diagnosis of the physician performing that examination, he or she should articulate the reasons behind his or her decision to disregard the examiner's report." *Iannotti* v. *Amphenol/Spectra-Strip*, supra, 13 Conn. Workers' Comp. Rev. Op. 321. Our affirmance of that case, however, was based, in part, on the principle enunciated by the board that "[i]t is the trial commissioner's function to assess the weight and credibility of medical reports and testimony. . . . The commissioner must determine as a factual matter the causal relationship between a claimant's symptoms and a compensable injury. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it. . . . Similarly, the conclusions drawn by the commissioner from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted; internal quotation marks omitted.) Id. We are also persuaded by the board's previous determination that although "a commissioner should articulate the reasons behind his decision to disregard a § 31-294f examiner's opinion, the ultimate decision is always with the commissioner . . . ." *Nieves* v. *SCM Co.*, 3317 CRB-6-96-4 (July 9, 1997).

Our review of the record persuades us that the commissioner's April 18, 1996 amended and articulated finding and award stated reasonable determinations that were based, in part, on a multitude of conflicting medical opinions regarding causation issues with respect to both the plaintiff's 1987 surgery and his contemplated knee replacement surgery. Specifically, the amended and articulated finding and award referenced an opinion from Glen Taylor, one of the plaintiff's treating physicians, which stated that "any injury could potentially

hasten the need for [knee replacement] surgery." The articulated finding and award also referenced an opinion from Richard Matza, an orthopedic surgeon, that "the 1981 initiating injury caused a defect within the (knee) joint and the strain of the work . . . *and the subsequent injuries, 1986, 1987, 1991, exacerbated or aggravated the condition.*" (Emphasis added.)[12]

Although White Oak and Liberty maintain that the commissioner disregarded Fisher's medical opinion, we are not convinced that the commissioner did, in fact, disregard Fisher's opinion. It was within the commissioner's discretion to credit all, part or none of Fisher's opinion, especially where several other medical opinions attributed at least some of the responsibility for the 1987 surgery and the future knee replacement surgery to the 1986 injury.

Our review of the record persuades us that the commissioner did, in fact, sufficiently articulate the basis for his decision that White Oak and Liberty, by virtue of the 1986 injury, were responsible for the plaintiff's 1987 surgery, a percentage of his permanent partial disability and a percentage of the future knee replacement surgery. Here, the various and conflicting medical opinions, which constituted the basis for the commissioner's decision in October, 1994, were clarified and emphasized in the April, 1996 amended and articulated finding and award. Accordingly, the defendants' claim fails.

II

White Oak and Liberty next claim that the underlying facts in this case do not support the commissioner's determination that the 1986 injury was (1) solely responsible for the plaintiff's 1987 surgery, (2) partly responsible for the plaintiff's permanent partial disability of the

---

[12] See footnote 6.

right knee and (3) partly responsible for the plaintiff's need for future knee replacement surgery. We disagree.

We are aware of no authority that prohibits a commissioner from crediting portions of several conflicting medical opinions in an effort to reach a fair and reasonable result. Because we will not disturb the commissioner's findings of fact where there is evidence in the record to support his decision; *Iannotti* v. *Amphenol/Spectra-Strip*, supra, 13 Conn. Workers' Comp. Rev. Op. 321; we will not do so here, where there is ample medical evidence and opinion that implicates the 1986 injury as a causal factor in the plaintiff's 1987 surgery, permanent partial disability and future knee replacement surgery.[13] Our review of the record reveals that the commissioner considered and credited portions of several medical opinions that were presented to him regarding causation as to the plaintiff's 1987 surgery, permanent partial disability and future knee replacement surgery. It was within his discretion to do so. Accordingly, this claim is without merit.

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.