## MARTIN TARTAGLINO *v.* DEPARTMENT OF CORRECTION
## (AC 18568)

O'Connell, C. J., and Foti and Lavery, Js.

Argued May 25—officially released October 5, 1999

*Paul S. Ranando*, for the appellant (plaintiff).

*Matthew I. Levine*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellee (defendant).

*Opinion*

O'CONNELL, C. J. The plaintiff, Martin Tartaglino, appeals from the decision of the workers' compensation review board (board) affirming the commissioner's denial of his claim for temporary partial disability benefits. The plaintiff contends that the commissioner improperly (1) determined that his stress related symptoms were not the result of his present employment conditions and (2) failed to accept the opinion and conclusions of the commissioner's examining physician. We affirm the decision of the board.

The following facts are necessary to the disposition of this appeal. The plaintiff began his employment as a correction officer with the state of Connecticut in 1982. He was initially assigned to the Litchfield correctional facility (Litchfield) for one month during job training and then was transferred to the Cheshire correctional facility (Cheshire) where he worked for five years.[1] The plaintiff returned to work at Litchfield in 1987.

In 1989, the Litchfield facility experienced overcrowding and, on occasion, guards were placed in situations in which they faced potential harm from inmates. As a result, the plaintiff began to experience work-related stress. The plaintiff saw a psychotherapist for approximately one year in an effort to combat insomnia and panic attacks. In 1992, Litchfield's security level was decreased from level four to level two when it became a drug rehabilitation center. The institution was operated differently and housed a different type of inmate. The Litchfield work environment was virtually stress free, and the plaintiff's symptoms completely disappeared.

---

[1] The Litchfield and Cheshire facilities were designated as level four security. Each correctional facility is graded at a particular security level; the minimum security level is one, whereas maximum security is level five.

In 1993, it was announced that the Litchfield drug treatment center would be closed and the plaintiff would be transferred to Cheshire, a level four facility. After the notification of his impending transfer, the plaintiff again began to experience stress related symptoms. In an effort to avoid being transferred, the plaintiff pursued administrative avenues that included, inter alia, requesting reassignment or a leave of absence. Finally, he filed a grievance with his union. All attempts were unsuccessful, and the plaintiff voluntarily tendered his resignation on Litchfield's last day of operation.

Subsequently, the plaintiff brought this workers' compensation claim seeking temporary partial disability benefits. The commissioner concluded that the plaintiff's stress did not arise out of or in the course of his employment and dismissed the claim. The plaintiff then appealed to the board, which affirmed the commissioner's decision. This appeal followed.

I

The plaintiff first claims that the commissioner improperly found that the plaintiff's stress related symptoms were not the result of his employment duties. "The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." *Spatafore* v. *Yale University*, 239 Conn. 408, 418, 684 A.2d 1155 (1996). "The appropriate standard applicable to the board when reviewing a decision of a commissioner is well established. [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts." (Internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 51 Conn. App. 523, 526–

27, 723 A.2d 1161, cert. granted on other grounds, 248 Conn. 906, 731 A.2d 308 (1999).

The role of this court "is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Aurora* v. *Miami Plumbing & Heating, Inc.*, 6 Conn. App. 45, 47, 502 A.2d 952 (1986).

Entitlement to workers' compensation benefits does not attach upon a mere request for payment. There must be an injury that (1) arose out of the plaintiff's employment and (2) occurred in the course of his employment. *Mora* v. *Aetna Life & Casualty Ins. Co.*, 13 Conn. App. 208, 212, 535 A.2d 390 (1988).

An injury " '[a]rising out of and in the course of his employment' means an accidental injury happening to an employee . . . while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer . . . ." General Statutes § 31-275 (1). To come within the course of employment, an injury must occur within the period of employment and at a place where the employee may be while he is reasonably fulfilling the duties of the employment. *McNamara* v. *Hamden*, 176 Conn. 547, 556, 398 A.2d 1161 (1979).

In the present case, the record supports the commissioner's finding that the plaintiff did not experience any stress while fulfilling his duties in the months leading up to his transfer. Moreover, before notification of the transfer had been communicated to the plaintiff his work record was exemplary, his absenteeism very low and his performance ratings very high. The plaintiff admitted that he had never missed a full day of work

at Litchfield due to stress. In light of this evidence, the commissioner found that while the plaintiff was at his position in the Litchfield facility, he did not experience any stress and it was only after he received notification of his imminent transfer that stress related symptoms surfaced.

The defendant, the department of correction, argues, and we agree, that the commissioner correctly determined that the plaintiff's stress was not the result of his employment duties or an activity that was incidental to his employment. Administrative policy decisions to open or close a facility or to arrange a transfer of an employee are not considered to be in the regular course of the employee's duties or incidental to his employment. As this court has previously stated: "[T]he term employer policy relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." (Internal quotation marks omitted.) *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, 27 Conn. App. 800, 806–807, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993).

In sum, the stress related symptoms experienced by the plaintiff were not the result of his employment duties nor did they result from an activity that he regularly engaged in or that was incidental to his employment.[2] The plaintiff's stress was caused by the possibility of a future transfer and, therefore, does not fall within the scope of his employment duties. The board properly concluded that the commissioner reasonably could have found that the plaintiff's stress did not arise out of or in the course of his employment.

---

[2] The legislature directly addressed this issue in 1993 when it specifically excluded a mental or emotional impairment that results from a personnel action, including but not limited to a transfer, promotion, demotion or termination. See General Statutes (Rev. to 1993) § 31-275 (16) (B) (iii), as amended by Public Acts 1993, No. 93-228, § 1. This statute became effective July 1, 1993, after the plaintiff sustained his alleged injury.

## II

The plaintiff's second claim is that the board failed to accept the opinions and conclusions of the commissioner's examining physician. The commissioner heard conflicting testimony as to the state of the plaintiff's mental health. The commissioner ordered the plaintiff to undergo an examination by Mark Rubenstein, a psychiatrist, who concluded that the plaintiff was suffering from an anxiety disorder causally related to the nature of his work setting. The commissioner also heard testimony from Richard Nilson, a psychiatrist, whose opinion was that the plaintiff did not presently exhibit psychological problems, but would, in all likelihood, exhibit them if he were to return to work. The plaintiff also was examined by Kenneth Selig, another psychiatrist, who stated that the plaintiff had an anxiety disorder that was substantially related to his employment but did not prevent him from performing his duties as a correction officer.

It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. *State* v. *Blades*, 225 Conn. 609, 629, 626 A.2d 273 (1993). The trier may accept or reject, in whole or in part, the testimony of an expert. *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981).

The plaintiff argues that the commissioner failed to accept the conclusion of the physician ordered by the commissioner himself to examine the plaintiff. Even when the plaintiff has been examined pursuant to General Statutes § 31-294f (a),[3] this court has held that it is still "within the commissioner's discretion to credit

[3] General Statutes § 31-294f (a) provides in relevant part: "An injured employee shall submit himself to examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. . . ."

all, part or none of [the ordered psychiatrist's] opinion, especially where several other medical opinions attributed at least some of the responsibility for the [condition at issue] . . . ." *Gillis* v. *White Oak Corp.*, 49 Conn. App. 630, 638, 716 A.2d 115, cert. denied, 247 Conn. 919, 722 A.2d 806 (1998).

"Because we are required to afford great deference to the commissioner's conclusion . . . we must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence." (Internal quotation marks omitted.) *Weiss* v. *Chesebrough-Ponds USA Co.*, 51 Conn. App. 106, 110, 719 A.2d 1225 (1998). As we have made abundantly clear in the past, it would be improper for the board to disregard the commissioner's findings and substitute its preference regarding testimony.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.