# SHARON CHESLER *v.* CITY OF DERBY ET AL.
## (AC 26805)

Flynn, C. J., and Rogers and Lavine, Js.

Argued March 28—officially released June 27, 2006

*Marie E. Gallo-Hall*, for the appellants (defendants).

*Lawrence C. Sgrignari*, for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendants, the city of Derby and Fairfield Insurance Company/ESIS, appeal from the decision of the workers' compensation review board (board) affirming the findings and award of the workers' compensation commissioner, ordering the payment of death benefits to the plaintiff Sharon Chesler, the dependent widow of the decedent, Nathan Chesler. On appeal, the defendants claim that the board improperly (1) determined that the injury suffered by the decedent was compensable under the Workers' Compensation Act, General Statutes § 31-275 et seq., (2) determined that the commissioner's conclusion that the death of the decedent arose out of and in the course of his employment was supported by the underlying facts and (3) failed to address their claim that the commissioner acted improperly in denying their motion to correct. We affirm the decision of the board.

The following facts were found by the commissioner. The plaintiff is the dependent widow of Nathan Chesler, who, at the time of his death, was attending a board of

education meeting in his capacity as the Derby superintendent of schools. In February, 1999, the Derby board of education informed the decedent that his contract would not be renewed and would end on June 30, 2000. On the evening of June 29, 2000, the decedent attended a special meeting of the board of education, which was scheduled in order to discuss the approval of a last chance agreement for a board of education employee who had been involved in an accident while using a city vehicle. This agreement was a stage in progressive discipline of the employee. The decedent was in favor of approving the last chance agreement. Lou Rogowski, the facility manager for the board of education, and Loren Lettick, attorney for the board of education, both thought the meeting would be short and that the board of education would approve the last chance agreement. The meeting, however, lasted approximately one and one-half hours, with the board of education directing angry questions toward Rogowski for the way he handled the problem with the employee and criticizing the recommendation of the decedent. Because of the tone of the meeting, it appeared to Rogowski that the decedent was struggling emotionally and physically with the way the meeting was proceeding. It appeared to Lettick that the decedent was under considerable stress during the meeting and was upset about its tone. During the meeting, the chairman of the board of education asked the decedent, Lettick and Rogowski to leave the room while the board of education discussed the last chance agreement. When the decedent, Lettick and Rogowski returned to the room, the chairman began to explain that it had been decided that the new superintendent would advise them on whether the last chance agreement should be approved. While the chairman was making this announcement, the decedent suffered a sudden cardiac event that resulted in his death. He was sixty-two years old.

Prior to the June 29, 2000 meeting, the decedent had a combination of medical problems, which consisted of hypertension, aortic valve surgery, atrial fibrillation and leaking heart valves. Lawrence Pareles, the cardiologist who had been treating the decedent for approximately two years prior to his death, was of the opinion that the death was due to a sudden ventricular arrhythmia and that the stress he experienced at the meeting was a significant contributing factor to his sudden cardiac death.

On June 17, 2004, the commissioner found that the death of the decedent arose out of and during the course of his employment as the superintendent of schools and ordered the defendants to pay death benefits to the plaintiff pursuant to General Statutes § 31-306, commencing on June 30, 2000, and continuing until her death or remarriage. The defendants subsequently filed a motion to correct seeking that six additional findings be added to the commissioner's June 17, 2004 finding and award. The motion was denied.

Thereafter, the defendants appealed to the board. The defendants claimed that the commissioner improperly determined that the plaintiff was entitled to death benefits under § 31-275 (16) (B) (ii) and (iii), misapplied the legal standard of "arising in and out of the course of employment" and improperly denied the defendants' June 18, 2004 motion to correct. The board affirmed the commissioner's decision, reasoning that § 31-275 (16) (B) (ii) and (iii) exclude recovery only for mental or emotional impairments and that a fatal heart attack is a physical impairment. The board also found that the evidence adequately supported the commissioner's decision. This appeal followed.

We begin by setting forth the standards governing our review of decisions by the board. "[W]hen a decision of a commissioner is appealed to the [board], the

[board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the review [board] is similarly limited. . . . Where, however, the appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Biasetti* v. *Stamford*, 250 Conn. 65, 70–71, 735 A.2d 321 (1999).

I

The defendants first claim that the board improperly found that a physical injury precipitated by work-related stress is a compensable injury under § 31-275 (16) (B) (ii) and (iii). We disagree.

This claim requires us to decide whether, under the facts of this case, a fatal cardiac event caused by employment related stress is compensable pursuant to § 31-275 (16) (B) (ii) and (iii) of the Workers' Compensation Act. The present appeal raises an issue of statutory construction that is one of first impression for this court, and, accordingly, our review is plenary. See *Genesky* v. *East Lyme*, 275 Conn. 246, 252, 881 A.2d 114 (2005). General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or

unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

The statutory provisions at issue in this claim are § 31-275 (16) (B) (ii) and (iii) of the Workers' Compensation Act. General Statutes § 31-275 (16) provides in relevant part: "(A) 'Personal injury' or 'injury' includes, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease. (B) 'Personal injury' or 'injury' shall not be construed to include . . . (ii) A mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease; (iii) A mental or emotional impairment which results from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination . . . ."

We first analyze the defendant's claim under § 31-275 (16) (B) (ii). "As the first step in our statutory analysis, we examine the relevant language of [§ 31-275 (16) (B) (ii)] to determine whether it is plain and unambiguous. To determine whether statutory language is plain and unambiguous, we examine the text itself and its relationship to other statutes. The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Correa* v. *Ward*, 91 Conn. App. 142, 146, 881 A.2d 393 (2005). We conclude that the language of clause (ii) of § 31-275 (16) (B) is plain and unambiguous. It excludes mental or emotional impairments from the definition of personal injury under the Worker's Compensation Act except when such impairments are caused by a physical injury or occupational disease. The statute does not exclude physical injuries brought on by work-related mental or emotional stress.

The defendants claim that § 31-275 (16) (B) (ii) states that a mental injury is not compensable unless it is predicated on a physical injury. The defendants also argue that the converse is true, and, consequently, the physical injury of the decedent is not compensable because the precipitating factor was an emotional impairment, work-related stress. Section 31-275 (16) (B) (ii) provides that certain mental and emotional impairments are not compensable injuries. The claim, as described in claimant's form 30C, was not for mental impairment, however, but was for a stress induced cardiac event. We agree with the board's conclusion that clause (ii) "excludes only mental or emotional impairments. A fatal heart attack is most definitely a physical impairment. Nowhere does the statutory exception purport to address physical impairments, whether they are precipitated by direct physical trauma or by some type of nonphysical, work-related mental or emotional stress. A plain reading of the statute does not support the [defendants'] position." A fatal heart attack is obviously a physical impairment, as the board found, and clause (ii) of § 31-275 (16) (B) does not by its terms preclude compensation for stress induced physical injuries, as in this case.

In *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 117, 527 A.2d 664 (1987), our Supreme Court, following a "long-standing rule that the claimant must prove that a sudden, unusual, and unexpected employment factor was a substantial factor in causing the claimant's condition," held that heart disease precipitated by work-related stress was a compensable injury under § 31-275.[1] Public Acts 1993, No. 93-228, § 1,

[1] In a case decided after the 1993 amendments to General Statutes § 31-275, our Supreme Court held that § 31-275 (16) (B) (ii) did not bar compensation for posttraumatic stress disorder that was exacerbated as a consequence of the claimant's work-related cardiovascular disorder. *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 787 A.2d 541 (2002). While not specifically addressing the issue presented in this case, namely whether a stress-induced cardiac event is compensable under that statutory scheme, the court in

amended § 31-275 (16) (B) (ii)[2] and eliminated from the definition of personal injury "a mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." It did not exclude stress induced physical injuries. In addition to the plain language of the statute, which makes this clear, our Supreme Court in *Biasetti* v. *Stamford*, supra, 250 Conn. 67,[3] discussed the 1993 amendments to § 31-275. The court discussed these amendments in the context of its determination that a police officer's claim of post-traumatic stress disorder combat fatigue syndrome was not a compensable injury under the statute. The court reasoned that although the disorder was an occupational disease itself, it was not caused by a physical injury or occupational disease and, therefore, was not compensable. Id., 79–80. However, and most significantly for this case, the court noted that if the mental impairments "were not considered to be an occupational disease, [then] a heart attack arising from the mental impairment would not be compensable. Clearly, that was not a result intended by the legislature." Id., 74 n.7. The court noted that "[i]n our review of the legislative history of Public Act[s] 93-228, § 1, we note

*Gartrell* found that § 31-275 (16) (B) (ii) did not preclude recovery under the facts in that case and noted that the evidence indicated that the plaintiff's cardiovascular disorder had been caused by work-related stress. Id., 32 n.3.

[2] This act also excluded a mental or emotional impairment that resulted from a personnel action, including but not limited to a transfer, promotion, demotion or termination. See General Statutes (Rev. to 1993) § 31-275 (16) (B) (iii), as amended by Public Acts 1993, No. 93-228, § 1.

[3] In *Biasetti* v. *Stamford*, supra, 250 Conn. 79–80, our Supreme Court, in concluding that § 31-275 (16) (B) (ii) precluded compensation for the plaintiff's physical symptomology associated with his posttraumatic stress disorder, reasoned that "[a]lthough a mental impairment may give rise to a distinct and separate 'personal injury,' such as a heart attack or stroke precipitated by mental stressors, the plaintiff in the present case seeks to extend coverage to mental ailments that produce concomitant physical symptoms." A distinction, therefore, was drawn between physical symptoms that are concomitant with a mental ailment and physical injuries that are precipitated by mental stressors.

that whenever the question of mental impairment arises, the discussion appertains solely to the exception allowing for mental or emotional impairment arising from a physical injury." Id., 79 n.9. According to the plain language of the statute, as buttressed by case law, the stress related physical injury in this case is compensable under § 31-275.

The defendants further claim that the injury of the decedent is not compensable under § 31-275 (16) (B) (iii) because his stress arose from a personnel action, specifically, the fact that his contract had not been renewed. We disagree. That clause excludes from the definition of "personal injury" and "injury" mental or emotional impairments that result from a personnel action, such as a demotion or termination. See General Statutes § 31-275 (16) (B) (iii). We next examine the statutory language of this clause and find it plain and unambiguous. The language relates to claims for "mental or emotional impairments," but the plaintiff's claim is for a fatal heart attack.

Furthermore, the commissioner did not make a finding that the nonrenewal of the contract of the decedent was a contributing factor to his stress induced fatal heart attack. Rather, the commissioner found that the June 29, 2000 meeting, involving a personnel recommendation of the decedent, was stressful for him and that the stress he experienced at that meeting, which concerned the approval of a last chance agreement for another employee, was a significant factor in his sudden cardiac death. We will not disturb this finding of the commissioner, as it is supported by the record, namely the testimony of Pareles. See *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 723–24, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003). The subject of the meeting was the last chance agreement proposed to be offered to another employee, not the "transfer, promotion, demotion or termination" of the

decedent. Furthermore, on the basis of the analysis previously set forth concerning § 31-275 (16) (B) (ii), clause (iii) of that statutory provision likewise does not preclude compensation in this case. The fatal heart attack at issue was a physical injury, and the plain language of clause (iii) does not preclude recovery for stress related physical injuries, such as this fatal cardiac event. For these reasons, § 31-275 (16) (B) (iii) does not preclude compensation in this case.

## II

The defendants next claim that the board improperly concluded that the evidence adequately supported the commissioner's conclusion that the death of the decedent arose out of the course of his employment. We are not persuaded.

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment. There must be a conjunction of [these] two requirements . . . to permit compensation." (Internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 266, 746 A.2d 743 (2000). "An injury is said to arise out of the employment when (a) it occurs in the course of the employment and (b) is the result of a risk involved in the employment or incident to it or to the conditions under which it was required to be performed. . . . [C]ases have held that an injury [occurs] in the course of the employment when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. . . . There must be a conjunction of [these] two requirements [of the test] . . . to permit compensation. . . . The former requirement

[of arising out of the employment] relates to the origin and cause of the accident, while the latter requirement [of occurring in the course of employment] relates to the time, place and [circumstance] of the accident." (Citations omitted; internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 228, 875 A.2d 485 (2005). "Whether an injury arose out of and in the course of employment is a question of fact to be determined by the commissioner. . . . If supported by competent evidence and not inconsistent with the law, the commissioner's inference that an injury did or did not arise out of and in the course of employment is, thus, conclusive." (Citations omitted.) *Pereira* v. *State*, 228 Conn. 535, 544, 637 A.2d 392 (1994).

There is no dispute that the injury occurred "in the course of employment," thus fulfilling that prong. The defendants maintain, however, that the evidence did not support the commissioner's conclusion that the death of the decedent did "arise out of the course of employment" and did not support the conclusion that his death was the result of a risk involved in the employment or that it was incident to it or to the conditions under which it was required to be performed. The defendants draw our attention to evidence indicating that the decedent sat passively during most of the meeting, informally chatted during the portion of the meeting when the board asked him, Rogowski and Lettick to wait outside, and that he did not look well and had a bad color during the day the board of education meeting occurred. The defendants rely on the medical opinion of Martin Krauthamer, a cardiologist who performed a medical records review for the defendants as to the cause of death. Krauthamer was of the opinion that the decedent died from a ventricular arrhythmia triggered by Quinidine, which he had been using at the time of his death, combined with stressed heart muscles due to hypertension, leaking heart valves and aortic valve

surgery as well as loss of electrolytes due to diarrhea. All of this evidence was included in the defendants' motion to correct in which they sought to have the commissioner accept this evidence and admit it as new factual findings. The commissioner refused to do so, denying the motion to correct. "It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert." (Citation omitted.) *Tartaglino* v. *Dept. of Correction*, 55 Conn. App. 190, 195, 737 A.2d 993, cert. denied, 251 Conn. 929, 742 A.2d 364 (1999).

There was sufficient evidence from which the commissioner could have determined that the injury arose out of the decedent's employment and was the result of a risk involved in the employment or incident to it or to the conditions under which it was required to be performed. The defendants rely on conflicting factual issues and medical evidence, which the commissioner resolved in the plaintiff's favor. The testimonial evidence demonstrated that the meeting was stressful to the decedent. Lettick testified before the commissioner on direct examination that the meeting addressed an issue that was important to the decedent, one that he wanted to see resolved before he left his position as superintendent. There was testimony from Rogowski that the tone of the meeting was one of anger, loud criticism and verbal attacks on the decedent and Rogowski, which caused the decedent stress and suffering, and that at one point he appeared almost to be cringing. Rogowski further testified that when he and the decedent returned to the meeting after the brief recess, the chairman declared that the board of education would not take action on the last chance agreement, at which point the decedent gasped, fell back in his chair and died. There was medical evidence from Pareles, the decedent's treating cardiologist for

approximately two years prior to the death of the decedent, that his use of Quinidine was not a factor in his ventricular arrhythmia attack, but that the stress he experienced at the meeting was a significant contributing factor to this sudden cardiac death. This evidence, which the commissioner credited, established a causal connection between the injury and the employment. The commissioner's determination that the injury arose out of and in the course of employment is supported by competent evidence and is not inconsistent with the law.

III

The defendants next claim that the board improperly failed to address their claim that the commissioner acted improperly in denying their motion to correct. We are not persuaded.

The defendants filed a motion to correct seeking six additional findings to be added to the commissioner's finding and award. In their motion to correct, the defendants asked the commissioner to add findings to the effect that the decedent: (1) developed a lack of interest in day-to-day administration after being informed that his contract would not be renewed; (2) was allegedly upset by the nonrenewal of his contract and was brooding, pensive and depressed; (3) appeared tired and that there was an expressed concern from others in the office about his health during the day of the June 29, 2000 board of education meeting; (4) did not appear agitated when he engaged in a thirty to forty-five minute conversation with Rogowski and Lettick during the hiatus in their attendance at the board of education meeting; and (5) upon returning to the meeting after the hiatus, did not speak to anyone on the board of education and was completely passive. The sixth and final finding that the defendants sought to have added was Krauthamer's medical opinion as to the cause of death.

The commissioner denied the motion to add the requested findings.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [O]n review of the commissioner's findings, the [review board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. . . . The finding of the commissioner cannot be changed unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . A material fact is one that will affect the outcome of the case." (Citations omitted; internal quotation marks omitted.) *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 598–99, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994).

In their motion to correct, the defendants merely sought to have the commissioner conform his findings to the defendants' view of the facts. It is the commissioner, however, who must determine which portions of a witness' testimony and what medical opinions are credible and, therefore, help form the basis of the commissioner's conclusion. The findings and the award of the commissioner were supported by the evidence and included all material facts that were admitted or undisputed. It was the commissioner's proper role to deter-

mine the weight to be given to the evidence that was before him.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.