## LEONARD J. ABBOTTS *v.* PACE MOTOR LINES, INC., ET AL.
### (AC 27964)

Harper, Robinson and Borden, Js.

Argued January 9—officially released March 18, 2008

*Kevin M. Blake,* with whom were *Steven H. Cousins* and, on the brief, *Rebekah L. Sprano,* for the appellant (plaintiff).

*Jason M. Dodge,* for the appellees (defendants).

BORDEN, J. The plaintiff, Leonard J. Abbotts, appeals from the decision of the workers' compensation review board (board), which affirmed the decision of the workers' compensation commissioner (commissioner), dismissing his claim for disability compensation from the defendant Pace Motor Lines, Inc. (Pace).[1] The plaintiff provides an extensive list of claimed errors on the part of the commissioner and the board. In substance, however, the plaintiff raises two main claims. He claims that the board improperly affirmed the commissioner's (1) decision to prevent him from asserting a repetitive trauma theory of work-related back injury and (2) finding that he failed to provide sufficient evidence to demonstrate that his back injury was caused while he was at work on March 25, 2003.[2] We affirm the decision of workers' compensation review board.

The commissioner found the following facts. The plaintiff commenced employment as a truck driver with Pace on November 12, 2002. On March 25, 2003, the plaintiff had driven merchandise to Taunton, Massachusetts, to deliver it to the Graybar Electric Company. The merchandise was packaged in various sized boxes, and the boxes were placed on several skids, or pallets, and secured with shrink wrap. When the plaintiff

---

[1] In addition to Pace, its workers' compensation insurer, AIG Claim Services, Inc., is also a defendant in this case.

[2] The plaintiff also asserts that many of the errors he alleges also deprived him of his right to due process. The plaintiff did not bring his asserted due process concerns to the attention of the commissioner; therefore, he did not preserve his due process arguments. Recognizing this, the plaintiff, in his reply brief, seeks to prevail under *Golding* on his constitutional assertion related to his repetitive trauma theory. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because of our determination that the commissioner did not prevent the plaintiff from raising a repetitive trauma theory, this claim must fail. The plaintiff does not seek to prevail under *Golding* on his other asserted due process violations, and, therefore, we decline to review them as being unpreserved.

attempted to deliver the merchandise, he discovered that much of the shrink wrap had torn and that the boxes were scattered. David Kinzer, an employee of Graybar Electric Company, indicated that he was unwilling to accept the merchandise unless the plaintiff restacked the boxes. While restacking the boxes, the plaintiff complained to Kinzer that his back was sore. The plaintiff continued to work his regular hours for Pace until April, 2003. On April 9, 2003, the plaintiff did not go to work. The commissioner found that the cause of the plaintiff's absence was that he had slipped on ice and had fallen, injuring himself. On April 10, 2003, the plaintiff sought medical attention for his back pain. He told his treating physician that the pain was not the result of any specific injury. On April 26, 2003, a magnetic resonance image of the plaintiff revealed that he had a herniated disk in his lower back. Kenneth I. Lipow, a physician, also examined the plaintiff and drafted a medical report of the plaintiff's back pain on June 3, 2003. The report did not mention either the March 25, 2003 incident or the April fall. The plaintiff underwent back surgery for the herniated disk on June 6, 2003. He underwent a second surgery on December 4, 2003. Lipow drafted a causation report of the plaintiff's back injury on February 2, 2004. The causation report indicated that the injury was likely the result of "work-related activities, specifically his long-standing truck driving occupation," and identified the March incident as a "substantial contributing factor to the pathology of the spine that ultimately led to [the plaintiff's] surgery." The causation report did not mention the April fall on ice. At the time that Lipow drafted the report, the plaintiff's fiancee was employed as a secretary in his office.

The plaintiff filed a claim, seeking, among other things, compensation for his back injury. A three day formal hearing was held before the commissioner. The

primary issue at the hearing was whether the plaintiff had provided adequate evidence to demonstrate that his back injury "arose out of and in the course of his employment." The plaintiff presented Lipow's causation report as evidence that his back injury was work-related and therefore compensable.

The defendants produced evidence that the plaintiff had reported slipping and falling on ice and injuring his back on or about April 9, 2003. The commissioner credited this evidence. While reviewing the medical evidence that the plaintiff proffered supporting his claim, the commissioner noted that it did not mention the April fall. The commissioner further noted that the plaintiff had previously filed a compensation claim for a back injury against a previous employer, which he also apparently failed to disclose to his examining physician. Finally, she noted that the plaintiff's fiancee was employed by Lipow at the time he drafted the causation report. For those reasons, the commissioner concluded that the medical report was unreliable. The commissioner subsequently denied the claim for compensation on the ground that the plaintiff had failed to provide sufficient credible evidence demonstrating that the injury for which he sought compensation was work-related.

The plaintiff appealed from the decision of the commissioner to the board. The board affirmed the decision of the commissioner. This appeal followed.

I

The plaintiff first claims that the commissioner improperly failed to consider a repetitive trauma theory of injury when determining that he did not demonstrate that his herniated disk was the result of a work-related injury. Specifically, the plaintiff states in his appellate brief: "At the hearing, the . . . commissioner refused to permit [the plaintiff] to include a repetitive trauma

theory as part of his case, indicating that this would create a deprivation of due process to the [defendants] and that [the plaintiff's] form 30C did not indicate a repetitive trauma claim." We disagree that the commissioner prevented the plaintiff from pursuing this theory.

The following additional facts are relevant to the plaintiff's claim. During the first day of the hearing, after stating the issues before the commissioner, the plaintiff requested that he be allowed to amend his statement of the issues. The following colloquy ensued:

"[The Commissioner]: Which issue are you amending? . . .

"[The Plaintiff's Counsel]: Compensability. . . . [I]t could be found that a specific injury occurred on March 25, 2003; it could also be found that that was a culminating repetitive trauma. In other words, that is a medical decision or a medical-legal decision, and we're not limiting that to being a specific incident . . . . [I]t could be considered a repetitive trauma as well. . . .

"[The Commissioner]: . . . [T]he form 30C was filed in this matter as a single date of injury. . . . There's no indication it was filed as a repetitive trauma. . . . You could have amended your form 30C at some point along the way here to have changed your—the premise of your claim, but to now make your claim a repetitive trauma claim at the inception of the formal hearing is . . . in no small part a deprivation of due process to the [defendants] and that [it] may or may not have prepared [its] case based upon a repetitive trauma theory."

The plaintiff's counsel provided various reasons why he should be allowed to amend his statement of the issues, and the defendants were allowed to give counterarguments. The commissioner then stated: "I'm going to take administrative notice of all forms that were filed

in this case, including the form 30C and any form 43s and other legal documents that were filed, and I'll read the medicals and we'll make a decision from there." To which the defendants' counsel replied, "[f]air enough." The plaintiff's counsel did not pursue the matter further.

The plaintiff's claim on appeal is based on the assumption that the commissioner, during the previously mentioned discussion, prohibited the plaintiff from arguing that his injury was the result of repetitive, job related trauma. A review of the record reveals, however, that the commissioner did not prohibit the plaintiff from pursuing such a theory. The commissioner indicated that she would make a determination about the proposed amendment at a later date. The record does not indicate that she returned to the request or that the plaintiff asked her to do so.[3] Because the plaintiff has failed to demonstrate that the commissioner prevented him from pursuing his repetitive trauma theory, the plaintiff's first claim must fail.[4]

## II

We next address the plaintiff's claim that the commissioner improperly concluded that he had failed to provide sufficient evidence demonstrating that his injury was compensable. In substance, the plaintiff argues that the commissioner improperly found that (1) he had slipped and had fallen on ice on or about April 9, 2003, and (2) Lipow's opinion that the claimed injury was

---

[3] The plaintiff, in his reply brief, argues that he did raise the issue again when he proposed findings of facts. The record reveals, however, that he did not. The plaintiff's proposed conclusions suggest only that the commissioner "find that [the plaintiff] sustained a work-related injury while in the employ of [the defendants] on March 25, 2003."

[4] Furthermore, the only expert evidence supporting the plaintiff's repetitive trauma theory was Lipow's report, which concerned both that theory and the March incident as contributing factors to the plaintiff's spinal pathology. The commissioner specifically found the report not to be credible. This finding is at least consistent with a conclusion that the commissioner considered and rejected the plaintiff's repetitive trauma theory.

caused by the March 25, 2003 incident was not credible.[5]
We disagree.

"The [claimant] has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment." (Internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 382, 727 A.2d 1253 (1999). "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Deschenes* v. *Transco, Inc.*, 284 Conn. 479, 487, 935 A.2d 625 (2007). This principle applies as well to reports of experts. See *Gillis* v. *White Oak Corp.*, 49 Conn. App. 630, 636–38, 716 A.2d 115, cert. denied, 247 Conn. 919, 722 A.2d 806 (1998).

A

The plaintiff first argues, in substance, that the commissioner's finding that he had slipped and had fallen on ice on or about April 9, 2003, was clearly erroneous. We disagree. There was more than ample evidence to support the commissioner's finding.

The commissioner credited the testimony of three of the defendants' witnesses, Robert Schultz, John Tetreau and Patrick Pacelli. These witnesses each testified that the plaintiff had reported to them that he had slipped on ice and injured his back in April, 2003.

---

[5] The plaintiff also argues that the commissioner improperly found that he maintained two driver log books, one reflecting his actual driving time and one recording a driving time that conformed to state and federal law. The plaintiff argues that the evidence showed that there was a single log book but that this log book was not always accurate. We agree with the board that the plaintiff has failed to demonstrate that the number of log books is relevant to his claim of compensability. Therefore, any error on the part of the commissioner in this regard is harmless.

Schultz was an employee of Pace, a nighttime dispatcher, in April, 2003, although he had ended that employment at the time of the hearing. Schultz testified that the plaintiff called him on April 9, 2003, and stated that he had slipped on ice, was in pain, and would not be coming into work. Schultz also testified that he filled out an absentee report for Pace on the basis of the information the plaintiff had provided over the telephone.

Pacelli, Pace's operations manager, also testified about the April fall. Pacelli testified that the plaintiff and his fiancee went to Pace's building on April 10, 2003, at lunchtime, bringing lasagna for the employees. Pacelli testified that he and the plaintiff discussed the plaintiff's back problems and that the plaintiff had told him that he had slipped and fallen outside of his house. He further testified that the plaintiff's fiancee then stated that the plaintiff had been in excruciating pain following the fall.

Tetreau, Pace's operations manager in charge of dispatch, also testified. He stated that the plaintiff was absent from work on April 9, 2003. Tetreau further stated that the plaintiff had called him that day and explained that he had fallen on ice at his home. Further, Tetreau testified that the plaintiff stated that he had hurt his back as a result of the fall.

The plaintiff raises several arguments concerning the commissioner's finding that he had slipped on ice on April 9, 2003, and injured his back. He does not, however, provide any reason why the court was not free to rely on the testimony of Tetreau, Pacelli and Schultz to find that the plaintiff had slipped on ice and injured his back. On the basis of their testimony, the commissioner was justified in finding that the plaintiff had slipped on ice on or about April 9, 2003.

## B

The substance of the plaintiff's next argument is that the commissioner committed clear error when she determined that he had not produced sufficient evidence to demonstrate that his back injury was caused during the course of his employment. The plaintiff also challenges a number of the commissioner's subsidiary findings, labeling them "contradictory" findings. We disagree.

Specifically, the plaintiff argues that the commissioner's determination that Lipow's conclusion was not credible was clearly erroneous because the commissioner based this finding on the absence of any mention of the April fall in the causation report and the fact that the plaintiff's fiancee worked for Lipow at the time Lipow drafted the causation report. This is improper, the plaintiff argues, because Lipow did not testify that his causation determination was influenced by either of these factors.

The plaintiff had the burden in this case to demonstrate that the injury for which he claimed compensation arose out of and in the course of his employment. He offered a causation report drafted by Lipow. The defendants cast doubt on the reliability of this report based on the absence of what could have been important information, namely, the April fall, and also suggested that the report may have been biased because of the employment relationship between Lipow and the plaintiff's fiancee. Because the plaintiff had the burden of proof, it was his burden to show that, despite these facts, the report was nevertheless reliable. The commissioner was free to find that the plaintiff had failed to do this.

Only one other of the plaintiff's claimed "contradictory" findings is relevant to the commissioner's causation determination. The plaintiff asserts that it was

contradictory for the commissioner to find that he did not suffer a compensable injury despite finding that he had a sore back from stacking boxes on March 25, 2003. We are not convinced that there is a contradiction in the findings that the plaintiff suffered from a sore back on March 25, 2003, but that he nevertheless failed to demonstrate that the injury for which he sought compensation was related to the soreness of that day.[6]

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[6] The plaintiff's other claims of contradictory findings are really arguments challenging the evidentiary support for various findings. We have reviewed them and conclude that they are without merit.